Good morning Illinois public court first district court is now in session. The Honorable Justice Nathaniel House presiding. Case number 20-1361 John Satchell v. Board of Fire and Police Commissioners for the Village of Melrose Park, Illinois. Good morning ladies and gentlemen. My name is Nathaniel House. I'm a judge on the Illinois public court and presiding over this case. My colleagues David Ellis and Cynthia Cobbs. This case is being heard via Zoom due to the COVID crisis. We're going to proceed as follows today. We will give each party in turn a 10-minute opportunity to make a basically uninterrupted presentation after which the judges will ask questions if they have any. The appellant will go first followed by the appellee. The appellant may reserve a few minutes for rebuttal after which we may ask questions of either party. Does anyone have any questions about how we're going to proceed today? No your honor. No your honor. All right can the parties who are representing who are going to present oral arguments please state their names and the parties they represent beginning with the appellant. Good morning your honors my name is Gianna Satchell and I represent the appellant John Satchell. Good morning your honor Patrick O'Connor on behalf of the appellees. Thank you. All right with that Ms. Satchell you may proceed when you're ready. Good morning your honors and may it please the court. My name is Gianna Satchell and I represent the appellant John Satchell. May I reserve two minutes for rebuttal? Absolutely. Thank you. During the proceedings of John Satchell's termination he discovered over 200 ex parte communications that occurred between the key decision makers before during and after his termination. He contends that the board the board's lack of independence and bias prevented him from receiving an impartial hearing requiring reversal. The board is required to conduct a fair and impartial hearing. Administrative proceedings must be governed by the fundamental principles and the requirements of due process of law which include an opportunity opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence. Let's talk about the impartiality of ruling upon the evidence. That is one of the most basic tenets of our legal system which helps ensure both Satchell's confidence and the public's confidence that it that their case has been adjudicated by a fair and detached decision maker. The board members must not only be fair but appear to be fair. The two issues I'd like to talk about today are that the trial court erred when it denied Satchell's request to reverse or remand the board's decision based on the appearance if not actual bias of these ex parte communications and this decision was flatly inconsistent with this court's precedent. Therefore, Satchell requests that this court reverse and vacate the board of police and fire commission's termination decision based on this actual if not apparent bias of the ex parte communications which deprived him of a fair and impartial hearing. Alternatively, Satchell requests that this termination decision be vacated and remanded to be heard before an impartial board with proper instructions. Secondly, we request that this court reverse Judge Meyerson's decision to deny Satchell's motion to amend the complaint. Starting with our first point on the fair and impartial board, the determination of whether an administrative hearing is fair and impartial requires a fact-specific analysis of the conduct of each of the board members before and during the proceedings. Interest does not necessarily mean a pecuniary interest. It only need be an interest that would be potentially debilitating to the impartiality of the decision makers. And if even one decision maker is not completely disinterested, his participation infects the entire action of the whole board rendering the result unsustainable. In Satchell's case, the integrity of the entire proceeding was compromised by the board members who were in constant communication with the police chief, the deputy chief, the mayor, and the prosecutor during all the key points of Satchell's disciplinary proceedings. Why does this matter? Satchell's father had filed a lawsuit against the village, the police chief, the deputy chief, and the mayor. And these are the same people that were in constant communications during each portion of his case. And this is not the first time that the board engaged in improper ex parte communications. In fact, in Kenichi versus the village of Melrose Park, Judge Cohen held that the board of police and fire commission had violated former firefighter Kenichi's due process rights. But there they held that that was a harmless error because the due process violation was based on the fact that the board's attorney, not the commissioners, had engaged in ex parte communications and that the firefighter had admitted that he didn't live in town. But here in Satchell's case, they took it one step further. The board members and the board's attorney had over 200 communications with the people who signed the charges and were to be called as witnesses in the case, the police chief and the deputy chief. This court has held that that kind of behavior creates an appearance of an impropriety in business of professional people versus barnage. The court tells us that in contested cases after the notice of charges is sent to the respondent, the agency members, employees and hearing officers are prohibited from communicating directly or indirectly with any person or party concerning any issue of fact unless there is notice given and an opportunity afforded to all parties to participate. That didn't happen here. An administrative law judge has an obligation to assure the public that justice is being administered fairly because the appearance of bias or prejudice can be as damaging to public confidence as would actual bias or prejudice would be. And here are in the barnage case, a FOIA response had revealed that the chairman of the administrative body had received over 375 phone calls from his personal office telephone to various representatives during the period where the Edison case was before the administrative body. They spoke with the attorney for the law firm that performed the lobbying services. They spoke with the lobbyist. They spoke with the consulting agency. They spoke with the chairman. They spoke with the CEO of Edison. And in this reasoning, the court used these significant numbers of phone calls that occurred at all these particularly important junctures of the case to hold that there was an appearance of an impropriety that was unacceptable. And that same issue is what's going on in this case. Sketchel's case has clearly met the barnage standard. The board's ex parte communications created this appearance of an impropriety. The underlying facts are nearly analogous. Sketchel attempted to uncover these ex parte communications through several FOIA requests for both the police chief and the deputy chief cell phones. But those efforts were thwarted multiple times and told that those records did not exist, which is in and of itself evidence of bias because they did exist and they were uncovered via subpoena. And it was only when those records were released that we actually discovered that there were all these different communications that had occurred. And if the board didn't have anything to why didn't they just turn these records over? And that's how we say that that in and of itself creates that appearance of a bias. Sketchel's efforts to uncover these were constantly thwarted, which is also a bigger problem here. And when you look at these communications in and of themselves, you see that Sketchel's executioner, which would be the police chief, was having multiple conversations with the chairman of the board. And the Danco court, as I outlined in my brief, says that no person should be tried before a bias adjudicator in any capacity. And that risk of prejudice is only heightened by the greater influence wielded by a board's elected chairperson. And that creates even higher probability of prejudice here. And perhaps the most egregious example of the board's apparent or actual bias is the exchange that the board had with the prosecutor or after the prosecutor rested in his case. And the board asked Sketchel's said, there's nothing to rebut. And Sketchel's attorney says you can't make a decision on a complaint. And Esposito, one of the commissioners stated, we have to make a decision on what we have. And then Commissioner Caputo says we've got nowhere to go. Even though they said there was nothing to rebut, and they have nowhere to go, they sustained nearly all 13 of the charges against John Sketchel. Moreover, the defendants try to make the argument that Sketchel was only on the contents of the cell phone or the cell phone calls. But that is without merit, because as the Barnish court tells us, the telephone records created an appearance of an impropriety without even delving into the substance of the conversations. Defendants also contend that Sketchel was untimely in providing these phone records, but that is a nothing. Because as the Supreme Court in Williams versus Pennsylvania tells us, that bias presents a structural error, which may be noticed at any time. And in that case, the bias had occurred over 30 years before. The court held that the integrity of the judicial system was at stake, and it would be a miscarriage of justice to allow that decision to stand. And here we have the village who thwarted the repeated efforts to uncover the facts. Moreover, Supreme Court Rules 62 and 63 also apply as the Barnish court directs us. Moving on to my second point, the trial court erred in not allowing John to amend his complaint. And when we look at the factors of 2616B, is that amendments are freely allowed to be granted because they want to elevate form over substance. It's a very liberal requirement. And when you look at the loyal factors that were all met here, which is would the pleading would have cured any defects? Here we contend that they did. Based on the fact that the merits of the case were now, they were alleging scatula engaged in raised judicata, but that would be cured by allowing his complaint to be amended. Two, would there be any surprise or bias? The defendants have known about scatula underlying claims since January 2019, when he moved to amend the complaint in his dad's case. Three, was the timeliness of the proposed amendment timely filed? Here we contend that it was because it was still during the pleading phases that scatula moved to amend the complaint. And were there other opportunities to amend the complaint? Much like the loyal case, scatula has tried several times to bring the complaints, although they were denied each time by the defendants. Bottom line is scatula deserves to get its case heard by some forum. Given the extensive maneuvering by defendants, it is clear they're going through hoops to make that doesn't happen. That alone would be a manifest injustice to allow the court or defendants game of procedural whack-a-mole to carry the day and prevent his court from being heard. Thank you. All right. Justice Cobb, do you have any questions? Just one. Counsel, where was the the issue of bias all throughout the proceedings? In fact, we raised the issue of the phone records at the trial court level, but we raised the issue of bias throughout the proceedings from the very beginning. Was the matter ever contemplated or was there any ruling or decision made at the board level, the administrative level? There were a lot of decisions that were made, quote unquote, under advisement, or there were never any specific rulings that were made. I have no further questions. All right. Justice Ellis. Yeah, just a couple. Good morning, Ms. Schatchel. How are you? Good. How are you? Good. Thank you. Thanks for your presentation. I guess my question is somewhat of a procedural one. It touches on what Justice Cobbs was saying. Typically, when we have attacks on the board itself, when we have questions like bias or the composition of the board, there's been a whole big line of case law dealing with the sheriff's disciplinary board and whether the composition of the board was valid. Those things usually are filed outside of the administrative review law case. Those are usually separate lawsuits that are filed. Isn't that normally how that works? Your Honor, that would be correct. In fact, since you referenced the sheriff's case, we had filed a similar injunction in a separate matter involving the same board on the basis that the board had abolished itself in 2012. Okay. Yeah. You're familiar with this. Yeah. When we look at administrative review law, the statute says the case law is pretty clear. We are limited to what's before us in the record. It seems like the stuff that you're trying to add, I think you tried to supplement the record, but that's typically not allowed, right? Courts don't typically allow you to supplement the record. We just look at what happened below. If you have some argument that goes to something like bias, I suppose theoretically you could try to develop that before the board and try to raise that through the administrative process, but it seems to me like this is more of an outside attack where you're bringing in information you learned later through FOIA requests. I think the law gives you an avenue to do that, but I think that avenue is outside of the administrative review context, isn't it? Your Honor, you would be partially correct here because I think that I'm going to try to answer your question. I think it's kind of a twofold question, so I'm going to try to answer it as best as I can. While the administrative review process does not allow any extra evidence in, according to section 3-111A7, the court can remand the case based on newly discovered evidence as long as it was found that could not have been recently discovered sooner and it was material to the issues and not cumulative. Based on that fact, I think that remandment would be within the realm here because these issues were not uncovered until after the proceeding was over and not to any fault of ours because we had filed numerous FOIA requests to uncover this information, but we were unable to. Moreover, in the administrative process, we couldn't have gotten a subpoena to get that information, so it wasn't until a subpoena in a separate case that this even was revealed to us. Secondly, you'd be correct in the fact that this is something that is handled outside the actual administrative review case, and that's why we had filed a separate action for John Skatchel in the law division that we had moved to consolidate. What is the current status of that action? Why don't you just pursue that there? Why would that not be an available avenue? That was the preferable avenue, but then the defendants removed it to federal court. We went to federal court. During federal court, the judge asked that same question, why isn't this in state court? Why isn't this brought with the administrative action? There was some colloquy that occurred, and what we did at that point was it seemed that the defendants wanted us to now add these counts to the administrative review case, so that's when we filed the motion to amend the complaint. When that was denied by Judge Meyerson, that gave the defendants fertile ground to now claim in federal court that we had engaged in proper claim splitting, and the federal court agreed and said that based on, you know, we're going to see what happens in the appellate court before we decide to dismiss this case outright. So, if this amendment is not granted, John Sketch will never get his day in court. Okay, so you did pursue a separate action, but it got removed, and you've not met with a lot of success, it sounds like. Be that as it may, are you aware of any case law that would allow you to bring a claim like this, a bias, or other things? There's more of a direct attack on the, it's outside the administrative review record, in other words. In the actual administrative review case itself? I'm sorry, I'm not sure if I understand your question. Can you cite me a case where somebody has been able to raise something in an administrative review appeal that was outside of the administrative record? I believe that that would be either the Barnich case or the Naden versus Fire Department pension, and I could get you those case numbers specifically. That's okay, they're in your brief, but those cases were administrative review cases where somebody raised an issue that was not in the administrative record, and the court said that's we'll hear it. If I'm understanding my holdings correctly and your question, I believe that that was the case. If anything, I could issue a supplemental brief. I've never heard of that happening, that's why I'm asking. I mean, you raised a lot in your brief, and this was not one of your lead arguments, and that's fine, you can focus on whatever you wish. But the bias stuff, my first reaction, I will admit, to reading it was that's something that you raised in a different forum. I'm not aware of any administrative review law case where people started bringing in things outside the record. A separate lawsuit you try to consolidate, you can always try to consolidate cases and get them all before the same judge, and if it gets removed to federal court, I don't know how they removed it to federal court, but somehow they were able to get federal jurisdiction. We can't do anything about that, but I'm not aware of a case where this has happened, where somebody can bring in something outside the record as part of a claim. I'll read those cases. I mean, I'll do some more looking. Can I ask you one other question? When you move for leave to amend, we don't have a transcript of that hearing, do we? When Judge Meyerson denied your motion for leave to amend. We do have a transcript of that. We have a transcript in the record? Yes, it should be in the record. I believe it was August 19th of 2020. Okay. Did Judge Meyerson offer a basis on the record for the denial of the motion to amend? She said it was untimely. Untimely? Yes. Did you attach a copy of the proposed amendment to your motion? Yes, we did. Is that part of this record as well? Yes, it is. Okay. And if I may just back up for one second just to give a little bit more context on the motion to amend the complaint. So, right after Skatchel was terminated in January of 2019, as I previously mentioned during my presentation, his father had filed a federal lawsuit. We moved to amend his lawsuit to add Skatchel's claims in there. We didn't add his administrative review claims in there because that would have been too risky of a move based on the fact we only had 35 days. So, we brought all of his civil rights claims in that lawsuit with his father. That was one of the claims that, or one of the cases, this was back in 2019, Judge Norwell did not rule on that, and he denied our motion to amend the complaint until nine months later. And then after that, we had waited for the right to sue to be issued and reformulated our strategy to file a law division case. At that point, we filed a motion to consolidate the law division case and the ARL case to make sure we didn't claim split because that was not our intent. And at that point, as soon as we filed the motion to consolidate the cases, the defendants removed the case to federal court. Then during the consolidation hearing, Judge Flannery denied it without prejudice because he wasn't sure that the court even had jurisdiction anymore based on the federal claims being removed. And it was sort of unclear whether or not the state claims were left in state court. And then at that point, once we had the first hearing with Judge Feinerman in federal court regarding the removed claims, that was when it was said, why don't you just try to amend the administrative review case to put all the counts in that one? And then that's how we ended up in a situation where we're in right now, which is to amend the complaint. And then that was denied. So the claim of bias is couched in a federal civil rights claim? Yeah, it's laid out pretty explicitly. And I believe that the amended complaint that was filed in federal court is part of the record. If not, as I previously told Judge House, the amended complaint that we had filed a copy of it was attached to our motion. That's part of the record. But that kind of proves the point, right? You can file these separately. You can file these outside the administrator, usually with administrative review. We look at what happened in the hearing, were there irregularities, was the evidence sufficient? You've raised many questions, validly so. But when we hear kind of these more outside claims, they're usually filed in a separate lawsuit and it sounds like they were filed in a separate lawsuit. Right. But here we have a situation where because of the constant objections by defendants to any forum we bring this case in, that we run the risk of now not even being heard in any forum because of that. And that's where we're really in the quagmire that we're in. Our intent from day one was to have this case consolidated with his father's because the evidence was so intertwined and figuring that for purposes of judicial economy, that would be enough. But then the defendants objected to that. So everywhere we brought his case, they've objected to. And that's where we have now ended up where we're at. And as to your second part of your question about not being able to include other evidence outside the record, in some ways, it's easy enough to remand the case back to the board to find out, either take more evidence of this bias issue or to reverse it completely based on the impermissible appearance of the bias. Okay. Thank you. All right. Any other questions? All right. All right. Mr. O'Connor, you may proceed when you're ready. Thank you. Thank you, your honors. Patrick O'Connor for the appellees may please the court. So I just want to touch on a couple of things that were brought up in petitioner's argument. One is on the ex parte communications. So the ex parte communications, which petitioner says today were raised throughout the proceedings is somewhat surprising to me because bias was not an argument made in the briefs before Judge administrative review and the related counts was completed in December of 2019. Only then did the plaintiff file a motion to supplement the record with supposed ex parte communications that consisted of records of telephone calls between members of the board and members of the village or employees of the village. What those conversations entailed, we don't know. All that they wanted to supplement the record with was evidence of these records. And so, but going back to the hearing before the board, if in fact it was raised at the time, plaintiff filed a motion before the board heard any evidence in the case to enjoin the board from hearing it, claiming that they lacked jurisdiction, that they had been abolished. That was denied. And then that suit before Judge Meyerson was decided, the court decided that the board did have jurisdiction to hear the charges. That case went up on appeal. It was affirmed in the appellate court in an unpublished opinion in 2020. And so those, the issue of bias wasn't raised in that case either. So what you have is the plaintiff, what the court said is that the arguments on bias were not made during the briefing on the administrative review and the related counts. And she was, the court was not going to allow them to do it after that, that they were at least on notice. And the statements by petitioner's attorney today substantiate that, that they were at least on notice of the supposed bias issue. They were issuing FOIAs, they were issuing subpoenas to get these phone records during the pendency of the briefing on the administrative review, and they never brought it up until afterwards. And so the court, I think rightly said that that issue was waived, maybe more appropriately called forfeited. But that, that and the second argument made today regarding the amendment of the complaint are both subject to the abuse of discretion standard, which is the most deferential standard other than no review. And the standard on the abuse of discretion is that no reasonable person would agree with the position taken by the trial court. And given the record in this case, the briefing that the complaint for administrative by the Mr. Skatchel's attorneys in December of 2019, all during that time when FOIAs were being issued to get these records, there was no indication in either of the briefs or in statements to the court that we need an extension of time to develop this bias argument and bring it here. They didn't bring it in prior lawsuits to enjoin the board. They didn't bring it in the last jurisdiction to hear the charges that went through Judge Meyerson, went to argument, went to the appellate court and was resolved against them. And so we believe that the judge correctly found that the issue of bias was waived, that they weren't, she was not going to allow them to raise that issue after that, particularly because at least according to her order, they knew about it during the pendency of the briefing and they never brought it up. And so when you're talking about the second argument that they made regarding the denial of the amended complaint, again, the complaint in this case, the administrative review complaint and related claims was filed on December 31st, 2018. They didn't bring a motion to amend the February of 2020. And at that time, the judge did say it was untimely. She also said it would prejudice the defendants by bringing in not only an additional eight claims, but additional defendants after, again, this is all after the briefing on the administrative review had been completed. And so we were waiting for a oral argument on that. And at that point, the judge said that it came too late. She looked at the factors contained in Loyola Academy. And she concluded that the proposed amendment didn't cure a defect. It sought to add additional claims and additional defendants. It was not timely because Mr. Skatchel knew of his purported civil rights claims, either at the time he filed the administrative review complaint or shortly thereafter. And the evidence of that is that this complaint, this administrative review complaint that's before this court today is filed on December 31st, 2018 and January 23rd, 2019. So within a month of the complaint for administrative review, he attempted to join his father's civil rights lawsuit in federal court. And when that was denied, he filed a separate civil rights action in Cook County. Because it raised federal questions, it was removed to federal court. That is correct. But all of that came too late for Judge Meyerson to add these unrelated claims against unrelated parties, additional parties that were not part of the administrative review and different claims that didn't really arise from the hearing before the Board of Fire and Police Commission that took place in 2018. And so, again, it's hard to say that that constitutes an abuse of discretion, that no reasonable person would agree that waiting for the entire administrative review complaint to be briefed and to be a waiting argument to then attempt to add because they're running into procedural roadblocks in federal court for whatever reason that is. And again, that's not before this court. But if they're running into issues regarding bringing those claims, that is not really what this case is about here today. It's about whether the judge in our case abused her discretion in finding that it came too late, that it would prejudice the defendants by allowing the additional claims, and that they do about it at the time. And we know that they knew about it because within a month of filing the administrative review complaint, he was trying to join his father's civil rights complaint in federal court. And to let the entire case proceed on the administrative review, and then when that is all fully briefed, to say, by the way, I want to add additional civil rights claims and other statutory claims against additional defendants in this case, because I'm running into problems for whatever reason in federal court, that doesn't, to me, constitute an abuse of discretion. And so on both of those issues, the denial, and really, it's not the denial of the claim of bias, because the claim for bias was never made in the briefing on the administrative review. What they're really arguing is the court abused her discretion when they attempted to belatedly add these phone records that supposedly show ex parte communications. I mean, they may show communications. We don't know if they constituted ex parte communications, because they could be talking about, you know, the Cubs season opener or something, for all I know. But there's lots of reasons that they could be having conversations. The Board of Fire and Police Commission, not only hears charges against Mr. Skatchel, but they also hear, they also are responsible for setting the schedules for oral examinations of firefighters and police officers and setting exam dates and, you know, a number of other things that would constitute not ex parte communications. And so, like I said, I just go back to the fact that if they are claiming that they raised the issue of bias all throughout the proceedings, it's curious why they didn't raise it in any of the briefs before the court, prior to their reply brief being filed in December of 2019. And I'm sorry, was my time up? You have 38 seconds. I'm sorry. All right. And so, like I said, they didn't argue anything about the manifest way to the evidence. The decisions by the board were fully supported by the evidence. Any one of the findings of guilt would have been sufficient to discharge Mr. Skatchel. And he was found guilty of a number of them, including those which his own expert conceded he probably violated. Thank you. Justice Copp, any questions? I have no questions. Justice Ellis? Just a couple, maybe, Mr. O'Connor. Good morning. Good morning, Your Honor. So, I have to confess I'm not intimately familiar with every single claim that was raised in the federal lawsuit that Mr. Skatchel tried to join of his father's or the state court one that was generally about federal civil rights claims. Was bias ever raised, to your knowledge, and I suppose you probably would know, I can ask Ms. Skatchel as well, but was bias ever a claim or did it form a claim made in any of these other lawsuits? Not as a separate claim. So, there were a number of other lawsuits that Mr. Skatchel filed, including, like I said, early on before the board heard any evidence, there was a complaint that the board lacked jurisdiction, that they should be enjoined. There were 224 petitions claiming that filed in 2018, I think during the pendency of the hearing before the board, which lasted from April to November with continuances. I mean, it wasn't every day but not specifically. I mean, the argument that the board, that I am being forced to appear before a biased board is never made as a standalone claim. It may be tangentially related to some of the other claims that they made, but as a standalone claim, the argument was never made, particularly before Judge Meyerson, that I was before a biased board and therefore my due process rights were violated in those terms. Let me just stop you there. I understand what you're saying. Let's talk hypothetically, okay? I think we could all agree that a board that is biased is not capable of rendering a valid decision. I'm not saying that's what happened here, but just generally speaking, I don't think that's something anyone would disagree with. Let's say hypothetically, you were able to put together a case that the board was biased. Let's say hypothetically, you could go beyond FOIA requests. Maybe you could pull people's voicemails and find out that members of the board were talking about John Skatchel's case to each other, predetermining it, doing whatever appropriate ex parte sorts of things they ought to be doing. We could think of any number of things, right? Again, I'm not saying any of this happened, but if it did, it would be something you would probably discover well after the fact. So if hypothetically you found this, you found smoking guns all over the place, that the board was prejudging the case, they were out to get John Skatchel, all sorts of bad stuff. What is your remedy? How are you supposed to proceed? Well, I can tell you how they should have proceeded in this case. If it comes up after the fact, when there's no case pending, like no administrative review pending at all. Well, why don't we make it more like this case and say there's an administrative review pending, but the hearing is long gone. The hearing is long gone. The record is what it is. It's set in stone. And 18 months later, maybe the administrative review case is still lingering. They come upon this smoking gun evidence. What are they supposed to do in your opinion? I have to confess. I don't know what the, I mean, in this case, it wasn't, it was, they were at least thinking that the board was biased based upon what they claim in their 224 petition and some of the things that they said before the board, they were at least thinking that. I think they had FOIA records regarding conversation or at least telephone calls between interested parties and village officials. They were looking for information that they thought would support a claim that he was being singled out for prosecution. That was all that they had at the time that the charges were filed before the board that I represent. And so they were at least thinking that. And so I think that part of it is what Judge Meyerson is saying is that, look, you're at least thinking that this board is biased against you for the reasons that you were filing 224 petitions and FOIAs even before the complaints or the charges were filed before the board. And so how do you explain not developing that during the pendency of it? Maybe they should ask Judge Meyerson, I want to take, I've got some inkling that there's some ex parte communications, which may or may not be evidence of bias, but I want to explore that. I need additional time to do that. I want to take some depositions. I mean, I think that that could have been done in this case and should have been done in this case, but it wasn't. And so I think that, yeah, I mean, I think at some point there's a time. So if you're claiming that an administrative body is biased against you, I understand that the statute says that you have to file a complaint for administrative review within 35 days of that board's decision. And so I guess that at that point, when you file that complaint for administrative review, if you think that you were, that the board was biased for some reason, either because the rulings don't make any sense or for whatever reason, conduct during the hearing raises it. What you're talking about is something that's more sub rosa that you don't know that these people are friendly with each other. They're out to get him for whatever reason. They were at least thinking that at the time the charges were filed anyway. And so in this case, I think it would say, you would say, look, I agree with you that a bias board cannot render a valid decision. If they, if in fact they can show bias and that they were prejudiced as a process violation. We don't know if that would have occurred here because they waited too long to even try to raise the issue. And so, like I said, they did file their complaint for administrative review within 35 days, but they were on notice well before then, or at least they believed well before then that they were being railroaded, that this was a bias board, that they were out to get them. Do you think they would have the legal authority to amend any claim like that to an case? I mean, I would, I would guess, I mean, there is a provision in the administrative review act that allows for all issue that the circuit court, the circuit court can review all issues of the conduct of the hearing and the decision of the board. And so, I mean, if you're saying all issues, I would say that that bias would be one of them. That if, if, if the, if in fact they there any other issues besides these, because you're going to lose on these, but if you, and the way that I look at it, and maybe I'm just being cynical, but the fact that they bring it up after the reply brief is filed tends, at least to me, looks like they saw that they were not going to prevail on that. The decision of the board was against the manifest way of the evidence. So what else can they throw in there? They can throw in bias. They can try to add civil rights complaint, civil rights claims that would not be so subject to simple, a simple administrative review procedure, which is, you know, basically people file, each side files a brief. The petitioner files a reply brief and the court goes to a hearing on it based upon the administrative record itself. Civil rights complaint isn't decided on an administrative record. It's going to be decided upon depositions and interrogatories and things like that. And so, like I said, perhaps I'm being cynical. I don't have any evidence of this. My suspect, my suspicion is though that the timing of it, given that what they said today and what they have said, what they said before the board, that they were at least suspicious of the fact that there was ex parte or improper communications going on, and they never developed it for a year. And it's only when it looked like maybe that administrative review counts on the manifest way to the evidence were not going to go their way that they decided what can we throw in. And to me, it comes too late. I think the court was correct in saying that it came too late, because you were issuing these FOIAs. They got these records in September before they filed their reply. They never came into court and said, hey, we just got these records in September. Our reply brief is due. September of which year? Of 19. Okay. So the briefing basically took place all throughout 2019. The complaint was filed December 31st, 2018. And then throughout 2019 was the filing of the administrative record. And the briefing on it. And there were continuances granted probably to both sides. I don't even remember. But the reply brief was filed in December. They at that point had had the records from FOIA belated or not since September, I think is what they said in their motion for leave to file or leave to supplement that record. And so at that point, maybe they would have made a valid argument that, hey, this is a new ballgame now. They didn't. And it's inexplicable why they didn't, particularly because they said today, and they said before, that that was a suspicion of theirs kind of throughout the from the time the charges were filed. Okay, so let me let me ask you this last question. It sounds to me, I'm trying to keep track of all these lawsuits, it sounds to me like the board was part of the of a federal lawsuit at one point. In fact, you may have been the ones who removed it to federal court, you probably were. We were the ones I don't know that it was my motion. But I there were other board was there. And yeah, I was there. Right. I mean, I joined in the motion for sure. Okay. Did did the board ever take the position before Judge Finerman that these civil rights claims should be litigated before the administrative review, judge in state court? I don't know. I know that the issue came up whether civil rights actions can be joined with an administrative review. And the answer to that is yes. And so I think if and I seem to recollect, so it's testing my memory, because I wasn't really prepared to talk about that. But the if that issue came up, the the answer would have been I think it was that civil rights actions can be joined in a administrative review action. That's I think that's Illinois Supreme Court precedent that says that. And, but they, the issue here was they filed it as a separate action. They didn't instead of trying to to amend that complaint of their first, the kind of the first salvo in far as far as the civil rights was to try to for Mr. scatchel to join his father's civil rights lawsuit against the village, which did not include the Board of Fire and Police Commission. But and when that was denied, they filed a separate lawsuit in Cook County. And because it raised federal questions, it was removed. And I think if Judge Finerman and I believe he did ask, is it would it have been possible to join civil rights actions with the administrative review? And the answer is yes to that they can be why they weren't particularly when they were thinking about it shortly after they filed the administrative review is part of the problem in in they're trying to do it a year later is it just not timely in to wait until that point, whether it would have been providential or proper for them to do it. When they initially filed the complaint, they were at least thinking that his civil rights were violated when they initially filed administrative review complaint. And so it kind of defies logic why it wasn't filed simultaneously why they didn't add those claims in the administrative review claim. So the initial lawsuit that he joined with his father that was before Judge Norville and the the state court one that was removed, maybe the first one was removed also, but the second one that was removed, went to Finerman. Right, exactly right. I think Mr. Satchel's father initially filed in federal court, whereas... Okay, thank you. Thank you. All right, any other questions? If not, Ms. Satchel, you may take a few minutes for a rebuttal. We'll see when you're ready. Thank you. I'm going to try to address first the issues of bias and then the issues of the amended complaint. So as Mr. O'Connor had stated of why we did not bring the issue of bias sooner regarding these phone records, when we received the records in 2019, September of 2019, we received 22,000 pages of broad data and there were 6,000 different phone numbers that had to be mapped and they didn't say who they were, they said the phone numbers. So those had to individually be looked up and then mapped to the 22,000 pages of data. That's why it took us a little bit of time to get there, but to his point about whether there was bias that was raised before that, we did raise bias in the injunction. We raised the lack of political balance of the board members because the board members had individually donated well over 15 times to the mayor's campaign, political campaign. That issue is in the record at 361. Then as for the village prosecutor, he was allowed to file a petition to enforce the subpoena on the board's behalf, even though he was representing the village of Melrose Park, not the board. That is at C-2139 version two. The phone records were, the FOIA requests were interspersed between all of our suspicions, but we were met at every turn with the records don't exist. So we weren't even able to say, yes, we think that we're going to come into court with a real straight face argument because we were told that records do not exist. Moreover, as far as the motion to amend the complaint, here we easily could have bifurcated the two claims. You have the administrative review count and you have the basically the law division count or the civil rights charges. Those would require discovery. Those would require a whole separate process and it easily could have been bifurcated to hear the administrative review action and then to later hear the civil rights counts. Additionally, we also had in the Loyola case, that case was brought two years after it was filed. I think my time is up, technician, I thought. Yeah. Yeah, please. Okay. And here we have a board or we have defendants who are claiming that we were untimely, but yet at every single turn, at every single place that we tried to file the lawsuit, they objected to it. And just by the public policy alone of this unfair gamesmanship, Sketchel should be able to take his claim somewhere. It could be heard in state court as Mr. O'Connor conceded. And, you know, it, he says it was curious why it wasn't brought up sooner. It was because if we had that information, we would have used it, but we didn't have it. And that was at the village's own doing. Thank you, your honors for your time. Thank you. This case is well-argued and well-briefed. We enjoyed the presentations of both parties. The case will be taken under advisement and a decision will be issued in due course.